IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| SENECA SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL NO. 3:12cv19-REP-DJN |
| DOCKSIDE DOLLS, INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## REPORT AND RECOMMENDATION

During the Spring of 2011, copper components were removed from the air conditioning units of an abandoned building owned by Dockside Dolls, Inc. ("Dockside" or the "Defendant"). As a result, Dockside filed a claim with Seneca Specialty Insurance Company ("Seneca" or the "Plaintiff"), but Seneca denied coverage. The parties continue to dispute whether the governing insurance policy covers Dockside's losses. To that end, Seneca filed the instant action seeking a declaratory judgment that the subject incident was not a covered loss.[1] Dockside responded with a counterclaim for breach of contract (Counts I and II), bad faith (Count III) and violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C.Gen.Stat. § 75-1.1 (Count IV). Arguing that this matter is governed solely by Virginia law, Seneca moves for dismissal of Counts III and IV, both of which arise under North Carolina law.

The matter is now before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the Plaintiff's Motion to Dismiss the Counterclaim (ECF No. 15) or, in the alternative, Motion for Judgment on the Pleadings (ECF No. 20) or, in the alternative,

---

[1] The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), because the parties are completely diverse and the amount in controversy exceeds $75,000.

Motion to Bifurcate (ECF No. 18). Because the Plaintiff filed its motion to dismiss contemporaneously with its answer, it is appropriate to address the requested relief as seeking judgment on the pleadings under Rule 12(c).[2] *See Walter v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). Thus, the Plaintiff's Motion to Dismiss the Counterclaim (ECF No. 15) and Motion for Judgment on the Pleadings (ECF No. 20) will be analyzed together under Rule 12(c). Construed in this fashion, and for the reasons set forth herein, it is the Court's recommendation that the Defendant's Motion for Judgment on the pleadings (ECF Nos. 15, 20) be GRANTED, in part, and DENIED, in part. Specifically, the Court recommends that Counts III and IV be dismissed, but that claims for attorneys' fees and costs not be dismissed. The Court further recommends that the Motion to Bifurcate (ECF No. 18) be DENIED.

## I. BACKGROUND

The Court construes the allegations in the favor of the non-moving party, as required when resolving a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c); *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 591 (4th Cir. 2004) (citations omitted). Viewing the facts through such a lens, the Court has concluded that the facts are as follows.

Dockside, a Richmond, Virginia-based company, owns an abandoned building (the "Building") located in Graham, North Carolina. (Compl. at ¶¶ 10, 11; Countercl. at ¶ 1.) On or before April 23, 2011, one or more individuals climbed onto the roof of the Building and damaged the interior and exterior of five air conditioning units, including the removal of copper

---

[2] As the Court shall explain, *infra* at Section II, the standard of review governing a motion made pursuant to Rule 12(c) is identical to the standard governing a motion under Rule 12(b)(6). The sole difference is that the Court may consider all pleadings, including answers, instead of simply reviewing the complaint. Indeed, Seneca acknowledges the alternative authority to pursue the relief sought under Rule 12(c), rather than under Rule 12(b)(6). (Pl.'s Mot. to Dismiss ("Pl.'s Mot.") at ¶ 2, ECF Nos. 15, 18, 20.)

from within. (Compl. at ¶ 15; Countercl. at ¶¶ 6-9.) Those air conditioning units were rendered a total loss. (Countercl. at ¶ 10.)

During the relevant period, Dockside had insured the Building under a policy issued by Seneca (the "Policy"). (Compl. at ¶ 11, Ex. 1; Countercl. at ¶ 2.) Under the terms of the Policy, "Covered Property" includes "the building or structure described in the Declarations, including . . . [f]ixtures, including outdoor fixtures." (Compl. Ex. 1; Countercl. at ¶ 4.) Also, the "Covered Causes of Loss" form of the Policy provides that Seneca covers "[v]andalism, meaning willful and malicious damage to, or destruction of, the described property." (Compl. Ex. 1; Countercl. at ¶ 5.) However, that same provision also states that Seneca "will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars." (Compl. Ex. 1; Countercl. at ¶ 5.) Although the Policy identified the location of the covered Building as Graham, North Carolina, it identified Dockside's business address in Richmond, Virginia as the sole mailing address under the Policy. (Compl. Ex. 1.) Thus, the delivery of any insurance proceeds would be to Dockside's Virginia location.

On April 23, 2011, Dockside provided notice of its claim to Seneca which, in turn, denied coverage on August 24, 2011.[3] (Countercl. at ¶¶ 11-12.) After Dockside threatened litigation, Seneca initiated the present lawsuit seeking a declaratory judgment that the loss is not covered under the Policy, because it resulted from theft. (Compl. at ¶¶ 17, 24, 35, 38.) Dockside has responded with its own Counterclaim alleging that the loss resulted from vandalism or damage

---

[3] In its Counterclaim, Dockside alleges the dates of "April 23, 2012" and "August 24, 2012," respectively. (Countercl. at ¶¶ 11-12.) Given the date of this Report and Recommendation and the relevant timeframe of alleged events, the Court concludes that the Defendant intended to allege dates in the year 2011 and that reference to the year 2012 was a mere typographical error.

from burglary — not theft. (Countercl. at ¶¶ 14, 19.) Thus, Dockside alleges that Seneca breached the insurance contract when it denied coverage. (*Id.* at ¶¶ 17, 22.)

Dockside also asserted two additional claims, one for breaching the "covenant of good faith and fair dealing" (Count III) and another for violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C.Gen.Stat. § 75-1.1 (Count IV). (*Id.* at ¶¶ 23-42.) In its prayer for relief it also seeks attorneys' fees and costs pursuant to Va. Code § 38.2-209. Arguing that Virginia law applies both to the interpretation of the Policy and to matters of performance, Seneca seeks judgment on the pleadings on both Counts III and IV — neither of which states a claim under Virginia law. (Pl.'s Mot. at ¶ 2.)

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

### A.    Standard of Review

A motion for judgment on the pleadings made pursuant to Rule 12(c) is decided under the same standard as a motion to dismiss made pursuant to Rule 12(b)(6) with the sole difference being that the Court is to consider the answer in addition to the complaint. *Walker*, 589 F.3d at 139. "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a

"formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations

omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the

speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather

than merely "conceivable." *Id.* This "plausibility standard" is not equivalent to a probability

requirement, but the plaintiff must plead more than a "sheer possibility" that he is entitled to

relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering such a motion, a plaintiff's

well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable

to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such

deference. *Iqbal*, 556 U.S. at 678.

**B.     Discussion**

    **1.     North Carolina Claims (Counts III and IV)**

    Seneca seeks judgment on the pleadings as to Counts III and IV, arguing that neither

claim is recognized under Virginia law. Dockside does not dispute that Virginia law does not

recognize either claim; rather, it argues that North Carolina law governs issues of performance

and, therefore, the claims at issue. (Def.'s Opp'n to Pl.'s Mot. to Dismiss ("Def.'s Opp'n") at 2-

5.) Thus, Seneca's motion turns entirely on the governing choice of law rules.

    As a federal court exercising diversity jurisdiction, the Court must apply the choice of

law rules of the state in which it sits — Virginia in this case. *Erie R.R. v. Tompkins*, 304 U.S. 64,

78 (1938); *see also Felder v. Casey*, 487 U.S. 131, 151 (1988) (citation omitted). Under Virginia

law, "everything relating to the *making* of the contract is to be governed by the law of the place

where it is made; everything relating to the *performance* of the contract is to be controlled by the

law of the place of performance." *Black v. Powers*, 628 S.E.2d 546, 554 n.8 (Va. App. 2006)

5

(emphasis in original) (citation and internal quotation marks omitted).  A contract to provide insurance is "made" where it is "written and delivered." *Buchanan v. Doe*, 431 S.E.2d 289, 291 (1993).  Dockside's Virginia business address is on the face of the Policy, and there is no allegation otherwise disputing that the policy was delivered to its offices in Virginia.  (Compl. Ex. 1.)  Thus, Virginia law governs the interpretation of the Policy.

Dockside's claims also implicate Seneca's performance of the insurance agreement, because the breach of contract, if any, implicates Seneca's failure to pay for losses under the Policy. *See Best Medical Int'l v. Tata Elxi Ltd.*, No. 1:10cv1273, 2011 WL 5843627, at *4 (E.D. Va. Nov. 21, 2011) ("Breach of contract actions implicate performance issues") (citing *Sneed v. Am. Bank Stationary Co.*, 764 F. Supp. 65, 67 (W.D. Va. 1991)).  Seneca's failure to pay insurance proceeds does not implicate a duty that it perform any act in North Carolina, regardless of whether the subject property is located therein.  Rather, Seneca's duty to perform, if any, required it to deliver insurance proceeds to Dockside's offices in Richmond, Virginia. *See, e.g., Sandefer Oil & Gas, Inc. v. AIG Oil Rig of Texas, Inc.*, 846 F.2d 319, 325 (5th Cir. 1988) (finding that the place of performance was in Texas, because "payment of insurance proceeds was also to occur in Texas at the plaintiff's place of business"); *Recreonics Corp. v. Aqua Pools, Inc.*, 638 F. Supp. 754, 757 (D.S.C. 1986) (finding that the place of performance was South Carolina, because insurance proceeds were to be paid in South Carolina); *Commercial Union Ins. Co. v. Great Am. Ins. Co.*, 705 N.E.2d 370, 374 (Ohio App.3d 1997) (noting the place of performance of an insurance agreement as the place where insurance proceeds are to be paid).  It is Seneca's failure to pay Dockside that might constitute a breach of the insurance policy.

Because those funds are to be paid at Dockside's place of business in Virginia, Seneca's alleged failure to perform occurred in Virginia. Thus, Virginia law governs issues of performance.

Contrary to Dockside's argument, it does not change the analysis that North Carolina has a statute stating that "[a]ll contracts of insurance on property . . . in this State shall be deemed to be made therein . . . and are subject to the laws thereof." N.C.Gen.Stat. § 58-3-1. This statute is nothing more than North Carolina's choice of law statute, which would apply only if this federal court sat therein. *St. Paul Fire and Marine Ins. Co. v. Hanover Ins. Co.*, 187 F. Supp.2d 584, 587 (E.D.N.C. 2000) (citing N.C.Gen.Stat. § 58-3-1 as North Carolina's choice of law statute governing insurance policies). But since this Court sits in Virginia, it is bound to apply Virginia's choice of law rules, not those of North Carolina. *Felder*, 487 U.S. at 151.

In sum, Virginia law governs both the interpretation of the Policy and Seneca's performance thereunder. Thus, the Court recommends that Seneca's motion for judgment on the pleadings (ECF No. 15, 18) be granted with respect to Counts III and IV, neither of which states a claim arising under Virginia law.

## 2.    Costs and Attorney's Fees Under Va. Code § 38.2-209

The prayer for relief in Dockside's Counterclaim requests an award of attorney's fees and costs pursuant to Va. Code § 38.2-209. Seneca moves for judgment on the pleadings as to this request, treating it essentially as a separately alleged cause of action. Of course, it has not been asserted as a separate claim and courts do not permit such a separate claim. *See Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 594 F. Supp.2d 630, 654 (E.D. Va. 2009) ("Section 38.2-209 does not create an independent cause of action") (citations omitted). Instead, "a party may seek relief under Section 38.2-209 only after a judgment is entered against the insurer." *Id.*

7

To obtain fees under § 38.2-209, "a party must notify its adversary in its complaint that it plans to seek costs and attorneys' fees, and the complaint must contain an allegation of bad faith . . . so that the allegation may be investigated during discovery." *Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, No. 3:08cv233, 2008 WL 2857191, at *5 (E.D. Va. July 21, 2008). To that end, "[n]either a separate suit nor a separate count is necessary to satisfy those requirements." *Id.* Instead, the appropriate procedure is for a plaintiff to "stat[e] that it plans to seek costs or attorneys' fees under section 38.2-209 in its prayer for relief" and then "seek its costs or attorneys' fees by filing a suitable motion" if judgment is ultimately entered. *Id.* at *5-6.

Here, there is nothing procedurally improper with the manner in which Dockside invokes Va. Code § 38.2-209. It has not relied on this provision to assert a separate claim, but merely asserts factual allegations of bad faith and references the statute in its prayer for relief. There is no "claim" to speak of, and so the Court recommends that Seneca's motion for judgment on the pleadings (ECF No. 15, 18) be denied with respect to the attorneys' fees request.

### III. MOTION TO BIFURCATE

As an alternative to dispositive relief on the attorneys' fee issue, Seneca seeks an order bifurcating the issue from the main action. Since the Court has recommended denial of the motion for judgment on Va. Code § 38.2-209, it must address the propriety of bifurcation. For the reasons that follow, the Court recommends that Seneca's Motion to Bifurcate be denied.

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The decision whether to bifurcate is "within the sound discretion of the trial judge." *Bowie v. Sorrell*, 209 F.2d 49, 51 (4th Cir. 1953). In exercising such

discretion, any prejudice suffered as a result of a separate trial should be considered. *See Bedser v. Horton Motor Lines*, 122 F.2d 406, 407 (4th Cir. 1941) (affirming trial court's decision bifurcating trial where plaintiff suffered no prejudice).

Here, there is no reason to bifurcate the issue of attorney's fees under Va. Code § 38.2-209. First, there is no risk of prejudice or confusion to a jury since an award of attorneys' fees under the Virginia statute is decided by the judge, not submitted to the jury. *Winston v. State Farm Fire & Cas. Ins. Co.*, 97 F.3d 1450 (Table), 1996 WL 500943, at *3 (4th Cir. Sept. 5, 1996). Evidence on the issue may be heard by the trial judge outside the presence of the jury while they deliberate to prevent any prejudice. Second, it would not serve judicial economy to separate the issue from Seneca's underlying declaratory judgment action or Dockside's Counterclaim for breach of contract. Indeed, two separate trials would delay the proceedings and further tax the resources of the parties and this Court. Finally, there is no need to delay discovery on the matter, as this Court has specifically permitted such discovery to occur concurrent with discovery of liability in similar cases. *Adolf Jewelers*, 2008 WL 2857191, at *5 ("[T]he allegation may be investigated during discovery"). Accordingly, the Court recommends that Seneca's Motion to Bifurcate (ECF No. 20) be denied.

## IV. CONCLUSION

In conclusion, and for the reasons discussed herein, it is the recommendation of this Court that the Defendant's Motion for Judgment on the pleadings (ECF Nos. 15, 20) be GRANTED, in part, and DENIED, in part, such that Counts III and IV are dismissed. The Court further recommends that the Motion to Bifurcate (ECF No. 18) be DENIED.

Let the Clerk file this Report and Recommendation electronically and forward a copy to the Honorable Robert E. Payne with notification to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/  _____

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: June 22, 2012